RICHARD TRAVIS STARKS AND LEOLA AURELIA STARKS, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Starks v. Commissioner
Docket No. 30970-83.
United States Tax Court
T.C. Memo 1986-77; 1986 Tax Ct. Memo LEXIS 531; 51 T.C.M. (CCH) 500; T.C.M. (RIA) 86077; February 24, 1986. Richard Travis Starks and Leola Aurelia Starks, pro se. Linda B. Murphy and Alan Summers, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined a deficiency of $7,087.00 in petitioners' Federal income tax for taxable year 1979. Respondent further determined an addition to tax of $3,544.00 under section 6653(b). [1]
*532 The issues to be decided are (1) whether petitioners are entitled to a claimed deduction of $23,500 for alleged contributions in that amount to the Universal Life Church in 1979; (2) whether petitioners are liable for the 50 percent addition to tax due to fraud under section 6653(b)(1); and (3) whether petitioners are liable for damages under section 6673. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits thereto are incorporated herein by this reference. Petitioners Richard Travis Starks and Leola Aurelia Starks (hereinafter "petitioners") are husband and wife. They resided in Oakland, California at the time the petition in this case was filed. Richard Starks was employed as a gardener and Leola Starks was employed as a bus driver during the year in issue. Petitioners timely filed a joint income tax return for 1979, on which they reported income of $46,132. On their joint Federal income tax return for 1979, petitioners claimed a deduction for alleged charitable contributions aggregating $23,500. Petitioners received a refund with respect to their 1979 income tax return in the amount of $5,451.00 in May of *533 1980. Shortly after receiving this refund, petitioners issued a check in the amount of $3,916.00 payable to the Universal Life Church. They gave this check to an individual identified as Reverend Abraham Adu. Petitioners did not claim a deduction for this amount on their 1980 Federal income tax return. In return for the $3,916.00 paid to Adu, petitioners received a statement indicating a pledge of $23,500, or 50 percent of their annual income, to the Universal Life Church for calendar year 1979. The statement indicated that petitioners paid $1,500 on January 20, 1979, and $2,000 on the twentieth of each subsequent month. The statement was signed by Reverend Abraham Adu. Petitioners met with Special Agent Larry Sidener of the Internal Revenue Service on December 8, 1981. On that date, petitioners executed affidavits, under penalties of perjury, relating to the alleged $23,500 contribution to the Universal Life Church. The affidavits state that the alleged contributions were always made directly to Adu and were always in cash. Petitioners also stated that they received a receipt for these contributions early in 1980. In the course of his investigation of petitioners' 1979 *534 income tax return, Special Agent Sidener prepared an analysis of the cash available to petitioners in 1979. Sidener's analysis, which reflects all income received and all bank deposits and withdrawals, indicates that the maximum amount of cash available to petitioners in 1979 for all cash transactions, including day to day living expenses, was $15,705.47. On April 10, 1984, Adu was convicted of 11 counts of aiding and assisting in the preparation and presentation of false income tax returns under section 7206(2). In a notice of deficiency dated August 22, 1983, respondent disallowed petitioners' deduction for the alleged contribution to the Universal Life Church. Mr. and Mrs. Starks filed their petition with this Court on November 1, 1983. Subsequent to the filing of the petition, respondent mailed to petitioners a request for admissions. This request was initially sent by certified mail on June 21, 1984, and, when petitioners failed to reply, was sent again on July 23, 1984. Petitioners again failed to reply. Under Rule 90(e), these facts are deemed admitted as a result of petitioners' failure to reply. OPINION The first issue for decision is whether petitioners are *535 entitled to a deduction of $23,500 for alleged contributions to the Universal Life Church in 1979. Deductions are a matter of legislative grace and the taxpayers bear the burden of proving entitlement to the claimed deduction. ; ; ; Rule 142(a). In support of their charitable contribution deduction, petitioners offer only a "pledge statement" which they received in 1980. They did not produce any receipts issued at the time the alleged contributions were made nor any contemporaneous personal records indicating the dates or amounts of the purported contributions. Further, petitioners testified at trial that the dates of contributions indicated on the pledge statement were inaccurate, and offered conflicting testimony concerning the accuracy of the amounts of their monthly contributions. They testified, however, that the total was correct. Petitioners also testified that all contributions were made in cash and that their expenses were minimal, allowing them to pledge 50 percent of their income to the *536 church. Specifically, Mr. Starks stated that they did not own a house in 1979 and paid only $168 per month in rent. However, on cross-examination, he stated that petitioners purchased their home in 1979, making a down payment of approximately $5,000. On brief, petitioners stated that they purchased their home in October of 1979 for $30,000, with a down payment of $4,000. Petitioners further testified, on cross-examination, that two of their children were unemployed and lived in their home during that year, and that they provided these children with money for their daily living expenses. Petitioners argued, both at trial and on brief, that they had sufficient funds to make the contributions for which they claim their deduction. However, this Court is not bound to accept testimony at face value, even if uncontroverted, if it is improbable, unreasonable, or questionable. , affg. a Memorandum Opinion of this Court; , affg. a Memorandum Opinion of this Court; . In the *537 instant case, we do not accept petitioners' testimony concerning alleged contributions. Petitioners have failed to bring forward any credible documentary evidence which would substantiate their claim. They have testified as to the inaccuracy of the dates and possibly of the amounts contained in the pledge statement which they offer as proof of their contributions. This statement, obviously prepared long after the alleged contributions were made, is simply not credible. Further, petitioners offered no testimony or documentary evidence which would refute the currency analysis prepared by respondent's special agent. The analysis indicates that petitioners had, at most, $15,705.47 in cash available to make contributions to the Universal Life Church. Special Agent Sidener testified, however, that any living expenses and out of pocket expenses would also need to be duducted from this amount. Petitioners paid rent for nine months in 1979, and purchased their home in October of that year with a $4,000 down payment. They had two unemployed children at home. On these facts, it cannot be found that petitioners made cash contributions of $23,500 in 1979. Therefore, petitioners are not *538 entitled to a deduction for such contribution. The next issue for decision is whether petitioners are liable for the 50 percent addition to tax due to fraud under section 6653(b)(1).[2] That section imposes an addition to tax if any part of an underpayment of tax for the year in issue was due to fraud. This addition to tax is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the government for the heavy expense of investigation and loss resulting from the taxpayer's fraud. . Respondent has the burden of proving, by clear and convincing evidence, that petitioner has an underpayment and that some part of the underpayment for the year in issue was due to fraud. Sec. 7454(a); Rule 142(b); . The fraud envisioned by section 6653(b) is actual, intentional wrongdoing, and *539 the intent required is the specific intent to evade a tax believed to be owing. . The existence of fraud is a question of fact to be resolved upon consideration of the entire record. , affd. without published opinion ; . Fraud is never presumed, but rather must be established by affirmative evidence. . Direct proof of the taxpayer's intent is rarely available; therefore, fraud may be proved by circumstantial evidence. ; . The taxpayer's entire course of conduct may establish the requisite fraudulent intent. ; Fraud may also be proved through facts deemed admitted pursuant to Rule 90. . *540 Respondent has offered both circumstantial evidence and deemed admissions in order to satisfy his burden of proof in this case. Respondent alleges that petitioners' entire course of conduct establishes their fraudulent intent. Specifically, respondent claims that petitioners subscribed a false return for the year in issue; that petitioners gave false testimony to a special agent; that petitioners swore false affidavits; and that petitioners gave false testimony to this Court. Respondent's special agent testified concerning the general pattern followed by Adu in aiding and assisting in the preparation of false Federal income tax returns. Adu would inform individuals that they could make a contribution to his church and claim a deduction for six times the amount contributed. Respondent's agent testified that in the course of his investigation of Adu, he came across a check issued by petitioners to the Universal Life Church in the amount of $3,916. This check was issued in 1980. The agent then examined petitioners' 1980 tax return and discovered that this amount had not been deducted as a charitable contribution in 1980. The amount of this contribution is significant in that *541 it corresponds to Adu's general pattern of providing a receipt for six times the amount contributed. [3]
Petitioners were interviewed several times by respondent's agents. During these interviews, they maintained that they had made the $23,500 contribution in cash during 1979. On December 8, 1981, they provided respondent's agent with sworn statements to that effect. They produced no documentation to substantiate this claim other than the pledge statement in evidence in this case. At some point during these interviews, petitioners expressed doubt concerning the accuracy of the dates and amounts on that statement. Prior to trial in this case, respondent served on petitioners a Request for Admissions. This request, which was sent to petitioners on June 21, 1984, by certified mail, contained the following paragraphs: 5. Petitioners received a refund with respect to their 1979 tax return of $5,461.00 in May 1980. 6. Shortly after receiving their 1979 tax refund of $5,461.00 petitioners paid $3,916.00 to Abraham Adu. 7. In return for the $3,916.00 paid to Abraham Adu, petitioners *542 received a receipt indicating that they had made a charitable contribution of $23,500.00 in 1979. 8. The receipt from Adu was false and fraudulent. 9. Petitioners entered into an agreement with Adu in which they paid Adu for false and fraudulent receipt reflecting a fictituious charitable contribution. 10. Pursuant to the aforementioned agreement, petitioners paid Adu approximately one-sixth of the amount of the fraudulent receipt they received from him. 11. Petitioners did not in fact make any deductible charitable contribution during the taxable year 1979. 12. Petitioners were well aware of the fact that they did not make any contributions during the taxable year 1979 and that the receipt they received from Abraham Adu was false and fraudulent. Petitioners did not respond to this Request for Admissions. By letter dated July 23, 1984, respondent again sent a copy of the Request for Admissions to petitioners, who again failed to answer. Rule 90(c) states, in pertinent part, Each matter is deemed admitted unless, within 30 days after service of the request * * * the party to whom the request is directed serves upon the requesting party (i) a written answer specifically *543 admitting or denying the matter in whole or in part, or asserting that it cannot be truthfully admitted or denied and setting forth in detail the reasons why this is so, or (ii) an objection, stating in detail the reasons therefor. * * * Any matter deemed admitted is conclusively established. Rule 90(e). Thus, due to petitioners' failure to respond to respondent's Request for Admissions, all matters contained in the request are deemed admitted and are conclusively established. The matters which were deemed admitted and conclusively established under Rule 90 satisfy respondent's burden of proving the underpayment of tax specified in section 6653(b). These statements, together with petitioners' entire course of conduct, establish petitioners' specific intent to evade a tax believed to be owing. Although petitioners testified that they made the alleged contributions in cash during the 1979 taxable year, their testimony was simply not credible. Respondent's agent showed, through his currency analysis, that petitioners did not have sufficient funds to make the contributions they claimed as deductions. Further, petitioners offered no reasonable explanation for the failure to claim *544 a deduction for the check issued to the Universal Life Church in 1980. Based on the record before us, we conclude that petitioners intentionally used a false receipt to substantiate their claimed contribution. We sustain respondent on this issue. The final issue for decision is whether petitioners are liable for damages under section 6673. [4] Based on the entire record in this case, we decline to award damages under section 6673. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise indicated.↩
2. Section 6653(b)(1) provides: If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment.↩
3. Six times $3,916 is $23,496; petitioners claimed a deduction in the amount of $23,500.↩
4. Section 6673 provides: Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax.↩